233 N.J. Super. 259 (1989)
558 A.2d 848
PRUDENTIAL PROPERTY & CASUALTY INS. CO., PLAINTIFF-RESPONDENT,
v.
CONTINENTAL INSURANCE COMPANY, DEFENDANT-APPELLANT, AND RONALD A. RUSSELL, JR., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 22, 1989.
Decided May 18, 1989.
*260 Before Judges KING, BRODY and ASHBEY.
Thomas C. Kaczka attorney for appellant (Paul E. Latterman, on the letter brief).
Marshall, Dennehey, Warner, Coleman & Goggin, attorneys for respondent Prudential Property & Casualty Ins. Co. (Margaret A. Wurzer, on the letter brief).
Respondent Ronald A. Russell, Jr.'s brief was suppressed.
The opinion of the court was delivered by ASHBEY, J.A.D.
This case involves a question of insurance "stacking." Riverside Township Police Officer Ronald A. Russell, Jr. was involved in an automobile accident while driving a police car. He sought uninsured (UM) motorist benefits from the Continental Insurance Company (Continental), insurer of the fleet of vehicles owned by Riverside Township (Township), and from Prudential Property and Casualty Insurance Company (Prudential), insurer of his personal automobile. Prudential instituted a declaratory judgment action against Continental, contending that Continental's combined UM limit for the fleet must be paid by Continental before applying Prudential's UM policy limit.[1] Continental conceded primary liability for the UM coverage of the individual car driven by Officer Russell ($15,000), but resisted applying the combined limit of $120,000. On cross-motions for summary judgment, judgment was granted to Prudential and denied to Continental. Continental appeals and we reverse.
The accident occurred on March 17, 1983, prior to the January 1, 1984 legislation which amended N.J.S.A. 17:28-1.1 to prohibit stacking of UM coverage.
The Continental policy provided that the municipality was the named insured and that it was entitled to UM insurance for *261 each of eight vehicles. These were separately listed with a UM limit of 15/30/5 and a per-vehicle premium of varying amounts assigned. The policy said,
II. PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;
(b) any other person while occupying an an insured highway vehicle; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.
The insurance applies separately with respect to each insured, except with respect to the limits of the company's liability.
In Lundy v. Aetna Cas. & Sur. Co., 92 N.J. 550, 560 (1983), the Supreme Court held that under N.J.S.A. 17:28-1.1(a), as then written, and as applicable here, an insurer issuing a policy covering a number of vehicles for a named insured and for any additional insureds for which a per-vehicle premium was charged, was required to treat the UM coverage for each car as if separate policies had been issued. In Lundy it was conceded that had the named insured had separate policies for each of his cars, with the claimant as an additional insured on each, every policy would have been available to the claimant. Therefore, the limits were separately applicable and the insurer owed its insured a "stacked" coverage on the one policy which covered three cars. The Lundy court relied upon policy language relating to the insured, the intent of N.J.S.A. 17:28-1.1 to protect an insured irrespective of whether the insured's automobile was involved in the accident and the insurer's charge of independent premiums based on each vehicle covered. 92 N.J. at 560.
In Lundy (and other cases relied upon by Prudential) the claimants were additional insureds under the named insured's policy. From a contract construction point of view, the equivalent *262 of clause II(a) above applied.[2] As the Supreme Court noted in Lundy, the claimant as a named insured was protected by UM coverage both for an accident in which the claimant occupied a covered car, but also for an accident respecting any car in which the named insured was injured by an uninsured driver. See also Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277 at 282 (1974); Childs v. New Jersey Manufacturers Ins. Co., 199 N.J. Super. 441 at 449 (1985).
Russell was not a named insured, or a member of a named insured's family, but an employee of the named insured. Russell was a person covered for an accident with an uninsured motorist under clause II(b), not II(a) above, as a person "occupying" an insured vehicle, unless by some construction of the contract one could conclude that Continental extended to Russell the same UM coverage as to a named insured. Lundy, 92 N.J. at 555. We find no such language.
While it is undisputed that the precise issue raised here has not been addressed by our Supreme Court, in Guarantee Ins. Co. v. Anderson, 585 F. Supp. 408 (E.D.Pa. 1984), the United States District Court predicted that the New Jersey Supreme Court would not apply Lundy to a fleet policy, saying,
The [UM] coverage extended to the Lundy plaintiffs regardless of whether their injuries were sustained in an insured vehicle. "However, this argument and reasoning does not apply to a permissive user of a vehicle who pays no premium and does not receive the broader uninsured motorist coverage of a named insured." Cunningham v. Insurance Co. of North America, 213 Va. 72, 189 S.E.2d 832, 836 (1972). [Id. at 413].
We regard this reasoning as persuasive. If Continental had a separate policy for each of its eight cars, Russell, a permissive *263 user, would be covered only under the policy of the car he drove.
Moreover in Lundy (apparently assuming that it would be unlikely that the claimant under a fleet policy would be a named insured or the equivalent) the Court described the claim made in this case (that per-car limits in a fleet policy should be stacked) as a "far fetched" result of its ruling. 92 N.J. at 556 n. 2. That characterization was relied upon by the dissent which said that stacking coverage in a commercial fleet demonstrated the absurdity of UM coverage stacking. Id. at 564, citing Appleman (8C Appleman, Insurance Law and Practice (1981), § 5101 at 444, 449-451, which generally criticized "stacking" as commercially uneconomic).
Applying the rationale in Lundy persuades us, as it did the District Court, that Prudential's reliance on Lundy is misplaced. Nothing in the statute or in the contract supported the interpretation Prudential sought, a result which the dissent in Lundy called, "an absurdity, which no company could possibly afford to insure." 92 N.J. at 564.
The judgment appealed from is reversed.
NOTES
[1] Russell's Prudential policy had a UM limit of $100,000.
[2] The exact provisions of the Lundy policy are not contained in the opinion, except the reference to the claimant as an "additional insured." In Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 280-281 (1974), the claimant was considered an "insured" under his spouse's policy. In Childs v. New Jersey Manufacturers Ins. Co., 199 N.J. Super. 441, 446 (App.Div. 1985), rev'd on other grounds 108 N.J. 506 (1987), the claimant was considered an "insured" under his father's policy.